IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CT-3208-D

JAMES AARON HAYES, )
 )
        Plaintiff, )
 )
v. ) **ORDER**
 )
TRACY PHILLIPS, et al., )
 )
        Defendants. )

On October 18, 2012, James Aaron Hayes ("Hayes" or "plaintiff"), a state inmate, initiated this action under 42 U.S.C. § 1983 [D.E. 1]. Hayes proceeds pro se and in forma pauperis [D.E. 2]. On the same date, Hayes filed motions for appointment of counsel [D.E. 4], a preliminary injunction [D.E. 6], and for copies of the complaint to be provided for service on defendants [D.E. 8]. As explained below, the court dismisses Hayes's complaint in part for failure to state a claim and denies the pending motions.

I.

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must review and dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a)–(b)(1). A case is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Claims that are legally frivolous are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotation omitted). Claims that are factually frivolous lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676–77; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

"In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The Supreme Court has explained that the first prong is an objective one—the prisoner must show that "the deprivation of the basic human need was objectively 'sufficiently serious'"—and the second prong is subjective—the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" Id. (alteration

2

in original) (emphasis removed) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Helling v. McKinney, 509 U.S. 25, 36 (1993); Hudson v. McMillian, 503 U.S. 1, 8–9 (1992).

To meet the subjective prong, a plaintiff must show that the official acted with deliberate indifference. See, e.g., Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); Strickler, 989 F.2d at 1379. "[D]eliberate indifference entails something more than mere negligence, [but it] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997); see Farmer, 511 U.S. at 837; Estelle v. Gamble, 429 U.S. 97, 104–05 (1976); Waybright v. Frederick Cnty., 528 F.3d 199, 206 (4th Cir. 2008).

Although Hayes names defendants at three different prisons, his claims primarily arose at Eastern Correctional Institution ("ECI"). See, e.g., Compl. [D.E. 1] 2–4 (naming defendants at three prisons). First, Hayes asserts that he needs work boots in a narrow foot size but his requests for such work boots have been denied. Hayes first sought the work boots on August 12, 2008, from defendant Hilyard, who works in ECI's clotheshouse, but she "refused to commit to ordering plaintiff new 'special order' ... work boots in plaintiff's correct size" even though she "determined that plaintiff had 'narrow feet' and she observed old scars on plaintiff's feet from where plaintiff had sores and blisters from previously w[e]aring the wrong size boots." Compl. 5. Hayes filed a grievance, and eight days later, Hilyard gave Hayes a pair of work boots in his size. Id. Fourteen months later, Hayes's work boots had developed "holes in the soles and on the sides," so on October

3

28, 2009, Hayes sought replacement boots from Hilyard who informed Hayes that ECI could no longer special-order narrow-size boots, but would provide Hayes "a pair of 'over the counter' insoles to make up for the difference in size." Id. 6. Hayes objected, and Hilyard's supervisor, defendant Phillips, "flew into a state of rage and screamed" at Hayes. Id. Hayes has also offered to have his family purchase special-order boots, which is permitted at other prisons, but Hilyard and Phillips refused to permit the purchase. Id. 7; see also id. 15. Additionally, Hilyard and Phillips "have continued to purchase special order work boots for inmates similarly situated as the plaintiff, while refusing to treat the plaintiff similarly when it comes to boots." Id. 7. Hayes also asserts that "[u]pon information and belief, every Caucasian, Asian and/or Hispanic inmate having the same job and/or school assignment as the plaintiff from 10/28/09 to the present were provided safety toe shoes/work-boots, yet plaintiff was denied this same treatment. Id. 8. On June 19, 2011, "a barbell fell on plaintiff's left foot, fracturing plaintiff's toe, an injury that subjected plaintiff to severe pain for nearly two months." Id. 15. Hayes "asked to have his swol[l]en toe x-rayed during his an[n]ual physical but was informed . . . that there was nothing left for him to do concerning the injury, too much time had elapsed." Id.

Hayes has failed to state a claim concerning the work boots. To the extent Hayes asserts that he has a medical condition which requires special-order work boots, deliberate indifference to a prisoner's serious medical needs violates the prisoner's Eighth Amendment rights. See, e.g., Estelle, 429 U.S. at 104. To prove such a claim, Hayes "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104). A prisoner, however, is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim.

4

Estelle, 429 U.S. at 105–06. "Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment." Jordan v. Fischer, 773 F. Supp. 2d 255, 276 (N.D.N.Y. 2011); see Estelle, 429 U.S. at 105–06. Hayes has not plausibly alleged a serious medical need or anything more than a disagreement with prison officials over his need for narrow-sized work boots. To the extent Hayes asserts he was denied medical treatment for his fractured toe, Hayes has not alleged that he sought treatment or that he informed anyone of his pain. Thus, the court dismisses the claim.

Hayes has also failed to plausibly allege that, in denying him the special-order work boots, defendants acted in "callous disregard for and deliberate indifference to the personal safety of the plaintiff." Compl. 17–18. Notably, according to the complaint, defendants did not deny Hayes work boots. Rather, they refused to order specific boots for him, but offered insoles to help ensure that the standard-issue work boots would fit. Thus, "defendants' denial of boots was not conduct that was causeless, without restraint, and in reckless disregard of [Hayes]'s health such that it could be termed wanton in violation of the Eighth Amendment." Ganther v. Dalton, 396 F. App'x 105, 107 (5th Cir. 2010) (per curiam) (unpublished) (quotation and alteration omitted); see Stephens v. Johnson, 83 F.3d 198, 200–01 (8th Cir. 1996). Moreover, Hayes's reliance on the isolated injury that he sustained on June 19, 2011, does not alter the court's conclusion.

To the extent Hayes alleges that defendants denied him special-order work boots while "continu[ing] to purchase []special order work boots for inmates similarly situated as the plaintiff," Compl. 7, the equal protection clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional

5

or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiff has not plausibly alleged that he was treated differently from any person with whom he is similarly situated. Although pro se litigants are held to less stringent pleading standards than attorneys, the court is not required to accept as true legal conclusions or unwarranted factual inferences. See, e.g., Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 555; Coleman, 626 F.3d at 190. Plaintiff has not made plausible allegations to support his equal protection claim. See, e.g., Coleman, 626 F.3d at 190–91. Thus, plaintiff has failed to state a claim upon which relief may be granted, and this claim is dismissed.

Hayes also asserts that on December 17, 2010, after several weeks of "constant[] . . . 'heated arguments'" between Hayes and Phillips and Thornburg, Phillips summoned Hayes to the mailroom and accused him of a disciplinary infraction based on a "forever stamp" he placed on his outgoing mail. Compl. 12. A correctional officer searched Hayes's cell, and did not find any other forever stamps. Hayes filed a grievance, and shortly thereafter, Phillips summoned Hayes to the clotheshouse "and gave plaintiff a card that she had removed from the envelope that plaintiff had hoped would be mailed out that day, but she refused to return to plaintiff either the envelope or the stamp attached to it." Id. Phillips initiated a disciplinary proceeding against Hayes based on the forever stamp, which was later "enhanc[ed]" by an assistant unit manager, and Phillips mailed letters to the ECI superintendent and the Secretary of Correction to complain. Id. 13. "Plaintiff was read his rights, and permitted to present a written statement in his defense." Id. While the disciplinary action was pending, Hayes filed a grievance which was initially accepted, but then rejected. Id. The ECI superintendent met with Hayes, and ultimately had the disciplinary charges dismissed on January 6, 2011, and ordered defendant Phillips to allow inmates to purchase forever stamps in the prison canteen. Id. 13–14. On January 11, 2011, Hayes attempted to file a confidential grievance

6

with defendant Lewis to "inform [him] of the systematic disparate treatment, act(s) of reprisal leveled at him by defendant Phillips and others here at ECI, yet . . . . was not permitted to file the confidential grievance with . . . defendant Lewis." Id. 14–15. It appears Hayes wrote a letter to Lewis, to which Lewis did not respond. Id. 15.

Hayes's allegations fail to state a claim. To the extent Hayes challenges the disciplinary proceeding against him, Hayes's allegations demonstrate that prison officials afforded him the due process to which he is entitled. See, e.g., Superintendent v. Hill, 472 U.S. 445, 454 (1985); Wolff v. McDonnell, 418 U.S. 539, 563–66 (1974). To the extent Hayes asserts that Phillips initiated the disciplinary charge as a form of retaliation, the Fourth Circuit has described how to review such claims:

> [I]n forma pauperis plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive [28 U.S.C.] § 1915[(e)(2)(B)]. To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation. This would pose particular problems in the context of prison administration. Every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct. The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in . . . penal institutions.

Adams, 40 F.3d at 74. To survive frivolity review, Hayes "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Id. at 75. Hayes's allegations fail to allege that any defendant infringed any constitutionally protected right. Additionally, Hayes presents nothing more than naked assertions of retaliation.[1] Accordingly, the court dismisses Hayes's retaliation claim as frivolous.

---

[1] To the extent Hayes asserts that defendant Phillips and others have "subject[ed him] to acts of reprisal because [he] elected to file grievances, raise verbal complaints as well as write formal letters of complaint against defendants," Compl. 19, his allegation likewise fails to state a claim. See

7

To the extent Hayes challenges the taking of his envelope and stamp, even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Here, an adequate post-deprivation remedy is available to Hayes. See, e.g., Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983). Because Hayes has a meaningful postdeprivation remedy available in state court, this claim fails. Thus, Hayes has failed to state a claim upon which relief can be granted. To the extent Hayes challenges Phillips's refusal to mail the card, he has not alleged anything other than an isolated incident of mail mishandling, which does not rise to the level of a constitutional violation. See, e.g., Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003); Pearson v. Simms, 345 F. Supp. 2d 515, 519–20 (D. Md. 2003), aff'd, 88 F. App'x 639 (4th Cir. 2004) (per curiam) (unpublished); see also Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983). Notably, Hayes successfully mailed two other letters the same day. Thus, the court dismisses the claim.

Next, Hayes asserts that "[f]rom 10/12/09 to the present, at various times," defendants Asbell (the warden of Greene Correctional Institution), Phillips, Thornburg (a correctional officer in ECI's mailroom) and Hall (the warden of Hyde Correctional Institution) have censored his incoming magazines and other publications. Compl. 3, 8. Between August 16, 2010 and November 19, 2010, Hayes received five additional magazine censorship notices from either Phillips or Thornburg, all based on "'pull-outs'" or having perfume samples. Id. 8 10. Hayes received the censored magazines on each occasion. Id. On November 22, 2010, defendant Phillips posted a notice on an inmate bulletin board that the Department of Public Safety ("DPS") had revised its censorship policy to require mailroom staff to remove and destroy as contraband any "posters, cologne, DVD/CD's

---

Adams, 40 F.3d at 74–75.

8

samples" prior to delivering the publication to the inmate. Id. 10. "Defendant Lewis, as [DPS] Director of Prisons, officially si[]gned" this policy. Id. Hayes believes that this policy does not extend to "'pull-outs,'" yet mailroom staff have "confus[ed] a 'pullout' with a poster." Id. Thereafter, between October 20, 2011 and June 20, 2012, Hayes received "no less than" five censorship notifications concerning magazines and one book. Id. 11; see also id. 16. One censorship notice stated that a magazine Hayes had ordered "contained a 'photo depicting female with fully exposed breasts.'" Id. 11. Additionally, Hayes was unable to receive a book because it was "'from an individual, not from a legitimate publisher or distributor.'" Id. Although Hayes has frequently appealed the censorship notices, he has occasionally been told that he is not allowed to appeal, and has occasionally chosen not to appeal so that he could receive the censored publication. Id. 9–11, 16.

Hayes not only challenges the censorship of his incoming mail, he asserts that these defendants enforce this policy in "an arbitr[]ary and capricious manner, favoring suspect class(es) of inmates that excludes the plaintiff." Compl. 8. Specifically, on July 30, 2010, Thornburg notified Hayes "that content(s) of his Black Enterprise magazine was being censored because it contained a 'pull-out,' per defendant Hall."[2] Id. 9. However, "[a]fter 7/30/10, plaintiff would come into pos[s]ession of a Men's Journal magazine mailed to a Caucasian inmate here at ECI . . . . [which] had a practically identical 'pull-out' left intact, although the location of the 'pull-out' and the content of the 'pull-out' was 'indistinguishable' from the one that plaintiff had torn out of his Black Enterprise magazine (from the front of the magazine)." Id. "From 2009 to the present, plaintiff has collected discarded magazines mailed to Caucasian, Hispanic and Asian inmates through ECI's mail-

---

[2] It is unclear from the complaint why the superintendent of Hyde Correctional Institution would issue policies for ECI's mailroom.

9

room, and the said magazines either contained intact 'fold-out pages' and/or 'pull-outs,' and in some of the magazines, 'women were depicted with fully exposed breasts,' yet defendants Phillips or Thornburg did not initiate censorship, or refer these magazines to defendant Hall in a manner consistent with how they treated plaintiff who[] is similarly situated as these inmates." Id. 11. Hayes also asserts that "a caucasian inmate was permitted to receive several books through ECI's mail-room that were not sent to him from the publisher." Id.

Hayes's allegations are sufficiently specific and plausible to survive. See, e.g., Thornburgh v. Abbott, 490 U.S. 401, 415 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987); Bell v. Wolfish, 441 U.S. 520, 550 (1979); Procunier v. Martinez, 416 U.S. 396, 413 (1974). However, Hayes may not proceed as to all defendants. As for defendant Asbell, the superintendent of Greene Correctional Institution, Hayes alleges only that Asbell "adopt[ed] defendants Hilyard and Phillips' response to [a] grievance" Hayes filed. Compl. 8. Thus, Hayes attempts to proceed against Asbell based on his supervisory position. However, the doctrine of respondeat superior generally does not apply to a section 1983 action. See, e.g., Iqbal, 556 U.S. at 676–77; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Carter v. Morris, 164 F.3d 215, 220–21 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798–99 (4th Cir. 1994). Moreover, "participation in the administrative remedy proceedings is not the type of personal involvement necessary to state a claim based upon supervisor liability." Abdel-Aziz v. Johns, No. 5:07–CT–3095–FL, 2008 WL 4279696, at *3 (E.D.N.C. Sept. 15, 2008) (unpublished) (collecting cases). Thus, the court dismisses plaintiff's claims against Asbell. Hayes also appears to name Lewis, the DPS Director of Prisons, in connection with this claim because Lewis "officially si[]gned NCDOC Policy" concerning the censorship of publications. Hayes's claim against Lewis fails. Iqbal, 129 S. Ct. at 1948–49; Monell, 436 U.S. at 694; Carter, 164 F.3d at 220–21; Shaw, 13 F.3d at 798–99; Urbaniak v. Stanley, No. 5:06-CT-3135-FL, [D.E. 133] (E.D.N.C.

10

Aug. 27, 2010) (unpublished). Thus, the court dismisses plaintiff's claims against Lewis.

As for Hayes's motion for appointment of counsel, no right to counsel exists in civil cases absent "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989); see Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163. The facts of this case and Hayes's abilities do not present exceptional circumstances. Accordingly, the court denies Hayes's motion for appointed counsel [D.E. 5].

As for Hayes's motion for a preliminary injunction [D.E. 6], Hayes seeks "a pair of safety toe work boots in my size (9C)." Mem. Supp. Mot. TRO [D.E. 6-1] 1. The substantive standard for granting a preliminary injunction is the same as that for entering a temporary restraining order. See, e.g., U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006). A court may grant a preliminary injunction if the moving party demonstrates "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 22.

Hayes has not established that he is likely to succeed on the merits, that he is likely to suffer irreparable harm absent injunctive relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. Thus, Hayes has not met his burden of proof. Accordingly, the court denies Hayes's motion for a preliminary injunction [D.E. 6].

Finally, Hayes requests the court's assistance with making sufficient photocopies of his complaint for service on defendants [D.E. 8]. "The [in forma pauperis] statute specifically vests the

responsibility for service with the court and its officers." Jones v. Hashagen, 419 Fed. App'x 141, 145 (3d Cir. 2011) (per curiam) (unpublished); see 28 U.S.C. § 1915(d); Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir.2010); Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010); Olsen v. Mapes, 333 F.3d 1199, 1204 (10th Cir. 2003). Thus, the court grants Hayes's motion [D.E. 8].

II.

In sum, the court DISMISSES plaintiff's claims relating to his work boots, a disciplinary infraction, and defendant Phillips's seizure of an envelope and stamp and refusal to mail a card on December 17, 2010, along with defendants Hilyard, Asbell, Lewis, and Hardee. Plaintiff may proceed with his claims relating to censorship of his incoming publications against defendants Phillips, Thornburg, and Hall. The court GRANTS plaintiff's motion for assistance with serving the remaining defendants [D.E. 8], and DENIES plaintiff's motions for appointment of counsel and a preliminary injunction [D.E. 4, 6]. The clerk shall maintain management of the action.

SO ORDERED. This __7__ day of June 2013.

JAMES C. DEVER III
Chief United States District Judge