IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CT-3208-D

| | | |
|---|---|---|
| JAMES AARON HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TRACY PHILLIPS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On October 18, 2012, James Aaron Hayes ("Hayes" or "plaintiff"), a state inmate, filed this action under 42 U.S.C. § 1983 [D.E. 1]. Hayes proceeds pro se and in forma pauperis [D.E. 2]. On June 10, 2013, the court reviewed the allegations of the complaint pursuant to 28 U.S.C. § 1915A, dismissed plaintiff's claims concerning his work boots, a disciplinary infraction, and defendant Phillips's seizure of an envelope and stamp and refusal to mail a card on December 17, 2010 [D.E. 10]. The court also dismissed defendants Hilyard, Asbell, Lewis, and Hardee and denied plaintiff's motion for appointment of counsel [D.E. 4]. The court allowed plaintiff to proceed with his claims concerning censorship of his incoming publications against defendants Phillips, Thornburg, and Hall [D.E. 10].

On December 19, 2013, the court granted Hayes's motion to amend his complaint and directed defendants to file their amended answer on or before January 17, 2014 [D.E. 30]. On January 17, 2014, defendants filed an amended answer [D.E. 31]. On April 4, 2014, defendants moved for summary judgment [D.E. 38]. On that same day, defendants filed a motion to deem the summary judgment motion timely filed [D.E. 40]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the clerk notified Hayes about the motion for summary judgment,

the consequences of failing to respond, and the response deadline [D.E. 41]. On April 10, 2014, Magistrate Judge Robert B. Jones, Jr., granted in part Hayes's motion to compel discovery, and extended Hayes's deadline for responding to defendants' motion for summary judgment [D.E. 43]. On May 19, 2014, Hayes responded in opposition [D.E. 45] and filed several exhibits, including a number of publications. On July 2, 2014, Magistrate Judge Jones denied Hayes's motion for sanctions and cancelled a show cause hearing based on defendants' representation that they had provided all discovery materials to Hayes [D.E. 49–52]. As explained below, the court now grants defendants' motion for summary judgment.

I.

Hayes's remaining claim challenges the censorship of his incoming mail. Hayes asserts that defendants Phillips, Thronburg,[1] and Hall censor publications and other mail at Eastern Correctional Institution ("ECI") in "an arbitr[]ary and capricious manner, favoring suspect class(es) of inmates that excludes the plaintiff." Am. Compl. [D.E. 15] 9; see also id. 11–12 (naming Caucasian inmates whose mail was not censored). Hayes describes an instance when he received a censorship notice rejecting a book he had ordered as "not [coming] from a legitimate publisher or distributor," while "a Caucasian inmate was permitted to receive several books through ECI's mail-room that were not sent to him from the publisher." Am. Compl. 14. Hayes also received several other censorship notifications "between 10/12/09 to the present, at various times," and alleges that defendants "totally disregarded" and failed to follow official agency policy when screening and censoring Hayes's publications. Id. 9–14. Nonetheless, Hayes received the censored magazines on each occasion. Id.

---

[1] Hayes initially spelled this defendant's last name as Thornburg. It appears this defendant's last name is spelled Thronburg. See Thronburg Aff. [D.E. 38-3] 1.

The censorship notices at issue relate to material that the defendants deemed sexually explicit, as well as to magazine "pull-outs," such as posters and perfume samples. Am. Compl. 10–14; see Pl.'s Resp. Opp'n Mot. Summ. J., Exs. [D.E. 45-4] 4–11. Although Hayes frequently appealed the censorship notices, he occasionally was told that he was not allowed to appeal, and he occasionally chose not to appeal so that he could receive the censored publication. Am. Compl. 10–14; see Phillips Aff. [D.E. 38-4] ¶ 6 ("In all cases in which Hayes appealed a decision to the Publication Review Committee, the Committee upheld the facility's decision.").

In September 2010, the Department of Public Safety ("DPS") amended its censorship policy. Under the policy change, prison staff are allowed to remove banned materials, including fold-out posters and cologne samples, and deliver the magazine to the inmate without informing the inmate of the removed material. Thronburg Aff. ¶¶ 4–5; Phillips Aff. ¶ 2; Hall Aff. [D.E. 38-5] ¶ 3. The policy does not define a "poster," but defendants interpret the term to include "any page exceeding the single-page size of the magazine." Thronburg Aff. ¶ 8; see Hall Aff. ¶ 5 & Ex. B [D.E. 38-5] 8 (DPS Policy D.0101(h)); see also Thronburg Aff., Ex. A [D.E. 38-3] 5 (March 19, 2012 letter from DPS Publication Review Committee to another inmate concluding "that a poster may be of any size"). The censorship policy specifically bars "sexually explicit material[,]" but does "not apply to patently medical, artistic, anthropological or educational commercial publications." Hall Aff., Ex. B [D.E. 38-5] 14–15 (DPS Policy D.0109(f)(K)). The policy also prohibits any books which do not come "directly from the publisher, . . . . [which] is defined to include legitimate wholesale marketers and distribution centers . . . . [and] established retailers[.]" Id., [D.E. 38-5] 7 (DPS Policy D.0101(a)).

At ECI, prison staff notified inmates, including Hayes, of the change in policy by placing a notice on the bulletin board. The notice stated that "Publications that include posters, cologne,

3

DVD/CD's samples must be removed by mailroom staff prior to delivery to the inmate. The posters, cologne, DVD/CD should be destroyed as contraband. This is not an appeal issue." Phillips Aff., Ex. A. [D.E. 38-4] 4; see Am. Compl. 13. Hayes contends that defendant Thronburg failed to follow the new policy by continuing to issue censorship notices concerning pull-outs and perfume tabs after the policy went into effect. Am. Compl. 13–14; cf. Thronburg Aff. ¶ 5 ("For some time after September 2010, I still used the old form to formally notify the inmates that a poster or cologne tab had been removed . . . . due to some initial confusion as to whether such formal notification was still required, which it was not."). Hayes further contends that the notice posted at ECI is a "poorly written 'document' [which] actually 'contradicts' what is in the official [DPS] Policy that was 'signed into effect' by the Director of Prisons." Pl.'s Resp. Opp'n Mot. Summ. J. [D.E. 45-1] 5.

In considering the motion for summary judgment, the court views the evidence in the light most favorable to plaintiff and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. When

4

evaluating affidavits submitted in support of or in opposition to a motion for summary judgment, the court may reject inadmissible evidence (such as hearsay) described in such affidavits. See Fed. R. Civ. P. 56(c)(2); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

Defendants first assert that Hayes failed to exhaust his administrative remedies before filing suit. Mem. Supp. Mot. Summ. J. [D.E. 39] 6–8. The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84–85 (2006). The PLRA's exhaustion requirement applies to all prisoner "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA requires a prisoner to exhaust administrative remedies regardless of the relief offered through administrative procedures. See Booth v. Churner, 532 U.S. 731, 741 (2001). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Additionally, failure to exhaust administrative remedies is an affirmative defense that a defendant must plead and prove. See Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005).

To satisfy the PLRA's exhaustion requirements, grievances must be sufficiently detailed as to "alert[] the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002);[2] see, e.g., Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008). However, "[i]n order to exhaust their remedies, prisoners need not file multiple, successive

---

[2] The Second, Fifth, Sixth, Ninth, and Tenth Circuits have adopted the Strong standard. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (collecting cases).

5

grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013).

Defendants assert that Hayes was required to appeal each censorship notice to the Publication Review Committee in order to fully exhaust. Mem. Supp. Mot. Summ. J. 6–7. However, to the extent that the censorship notices issued to Hayes after September 2010 related to "pull-outs," the DPS publications policy does not permit appeals of staff decisions to remove these items from magazines. Phillips Aff., Ex. A. [D.E. 38-4] 4; Thronburg Aff. ¶ 5. The policy also does not permit any appeal of a disapproved publication because the publication appears on the "Master List of Disapproved Publications" maintained by the Publication Review Committee. Hall Aff., Ex. B [D.E. 38-5] 8–9 (DPS Policy D.0103(a)). Defendants have not explained why Hayes was required to follow an inapplicable appeals process.

Alternatively, defendants cite a grievance (numbered 3400-12-EC211) Hayes filed on August 24, 2012, which states:

> I am writing this grievance against Sgt. T. Phillips and the entire ECI mail room staff as a result of a systematic pattern of disparate treatment directed toward me when it comes to magazine(s) mailed to me here at ECI. When I received my March 2012 issue of Esquire magazine from C/O Hudson on 2/24/12, an "extension" of the cover page had been ripped completely off, as well as another rip on the face of the cover page at the name lab[el]. There is nothing in NCDOC policy & procedure that remotely authorizes this type of illegal & unjustifiable censorship of my magazine(s). If there is a policy that they're relying upon then I contend that, the said policy is being applied in an arbitrary and capricious manner favoring a suspect class of inmates that excludes me. This is not an isolated incident but rather the "latest installment" of an established pattern. I feel that the unjust censorship of my magazine(s) is an act of reprisal taken against me because in the past, I've exercised my right to make verbal complaints, write grievances & formal letters of complaint against Sgt. Phillips & her mailroom & clotheshouse staff.

Defs.' Mot. Summ. J., Ex. [D.E. 38-6] 3 (copy of grievance). Hayes requested "[t]hat the illegal/unjustifiable censorship of my 'mail/mags' cease immediately[.]" Id. Hayes fully exhausted

6

this grievance. Id. 1–3. Moreover, contrary to defendants' assertion that this grievance "only grieved the censorship of a single magazine," Mem. Supp. Mot. Summ. J. 8, the grievance put defendants on sufficient notice of the claims in his complaint. Thus, the court denies defendants' motion for summary judgment to the extent it relies on a failure to exhaust.

Next, the court addresses Hayes's claim that defendants failed to properly implement the DPS publications policy at ECI. See, e.g., Pl.'s Resp. Opp'n Mot. Summ. J. 4–8 ("Plaintiff's complaint is not in large part with the change in policy that 'came into effect' on 9/24/10 . . . . What plaintiff does have a problem with, is how the defendants" interpret the policy, especially as it relates to inmate appeals and the definition of a poster or pull out.). "[P]rison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation." Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished), cert. denied, 134 S. Ct. 925 (2014). Thus, to the extent Hayes's claim is based solely on his contention that defendants do not correctly follow the DPS publications policy, the claim fails.

To the extent Hayes claims that defendants' implementation of the publications policy violates his constitutional rights, the court assumes without deciding that prisoners have a generalized First Amendment right to send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Van den Bosch v. Raemisch, 658 F.3d 778, 785 (7th Cir. 2011). However, prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see Van den Bosch, 658 F.3d at 785. Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and

7

the outside world." Thornburgh, 490 U.S. at 408; see Kaden v. Slykhuis, 651 F.3d 966, 968 (8th Cir. 2011) ("[P]rison officials may lawfully censor prison mail that is detrimental to the security, good order and discipline of the institution."). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003); see Thornburgh, 490 U.S. at 413. In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly applied policy, open and examine an inmate's incoming mail. See Wolff v. McDonnell, 418 U.S. 539, 574–77 (1974); see Bell v. Wolfish, 441 U.S. 520, 555 (1979) (noting packages "are handy devices for the smuggling of contraband").

In Turner, the Supreme Court described four factors for courts to consider when determining the reasonableness of a prison regulation that impinges on an inmate's constitutional rights: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" to the regulation. 482 U.S. at 89–90 (quotations omitted). When analyzing the Turner factors, the court accords "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126, 132 (2003); see Bell, 441 U.S. at 547–48. Hayes bears the burden of demonstrating that the challenged policy fails to satisfy the Turner factors. See Overton, 539 U.S. at 132; Prison Legal News v. Livingston, 683 F.3d 201, 215 (5th Cir. 2012);

Van den Bosch, 658 F.3d at 786.

> The Supreme Court has also instructed that it is "important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion." Thornburgh, 490 U.S. at 415 (quoting Turner, 482 U.S. at 90). This neutrality requirement means that "the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." Id. (quoting Procunier v. Martinez, 416 U.S. 396, 413 (1974)). Prison regulations that "draw distinctions between publications solely on the basis of their potential implications for prison security" are facially neutral in the relevant sense. Id. at 415–16.

Prison Legal News, 683 F.3d at 215.

Viewing the evidence in the light most favorable to Hayes, and according defendants the appropriate level of deference, the censorship decisions Hayes challenges easily satisfy the Turner factors. First, the challenged regulations are content-neutral. Second, courts repeatedly have found a rational nexus between regulations similar to the ones Hayes challenges and legitimate penological interests in maintaining institutional security and order. See, e.g., Bell, 441 U.S. at 550–51 ("[A] prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores does not violate the First Amendment rights" of a prisoner; also noting the "administrative difficulties posed by the necessity of carefully inspecting each book mailed from unidentified sources"); Jones v. Salt Lake Cnty., 503 F.3d 1147, 1158–59 (10th Cir. 2007); Forter v. Geer, 868 F. Supp. 2d 1091, 1100 (D. Or. 2012), aff'd, 536 F. App'x 724 (9th Cir. 2013); Floyd v. Hergenrother, No. 1:11-CV-158-RJC, 2012 WL 2091175, at *6 (W.D.N.C. June 11, 2012) (unpublished); Couch v. Jabe, 737 F. Supp. 2d 561, 566 (W.D. Va. 2010) ("[P]rison regulations banning sexually explicit material . . . are reasonably related to legitimate penological interests."). Hayes has also failed to demonstrate that the regulation prohibiting posters or pull-outs is impermissibly vague. See, e.g., Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983) (noting that a prison regulation can only be stricken for vagueness if "it is impermissibly vague in all of its

9

applications" (quotation omitted)); Koutnik v. Brown, 456 F.3d 777, 783–84 (7th Cir. 2006). Thus, the court grants summary judgment to defendants on Hayes's claim that defendants' implementation of the DPS publications policy violates his First Amendment rights.

As for Hayes's claim that defendants apply the publications policy in a discriminatory manner, "[t]he Equal Protection Clause indisputably protects prisoners from arbitrary racial discrimination[.]" Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Id. Although pro se litigants are held to less stringent pleading standards than attorneys, the court is not required to accept as true legal conclusions or unwarranted factual inferences. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Hayes has failed to raise a genuine issue of material fact about whether defendants made any decision to censor his mail based on his race. Simply put, Hayes's "subjective objection to the actions of the Defendants is simply insufficient support for an Equal Protection claim. At best, the plaintiff has only alleged an isolated and minor incident of differing treatment among prison inmates, which is insufficient to support a claim of unlawful discrimination." Gadson v. Fuson, No. 3:13-1050, 2014 WL 1631002, at *3 (M.D. Tenn. Apr. 24, 2014) (unpublished); see Brown v. Warner, No. 2:13-CV-00130-JTR, 2014 WL 1682867, at *9 (E.D. Wash. Apr. 29, 2014) (unpublished). The "evidence" submitted by Hayes in support of his equal protection claim includes a total of twelve publications which span a time period from July 2010 to March 2014. These exhibits include magazines with blacked-out address labels, preventing the court from making any determination as to the identity of the recipient, Pl.'s Ex. SJ-12 (December 2011 Sports Illustrated

10

magazine) and SJ-13 (November 2012 Esquire magazine); a magazine which has no address label at all, Pl.'s Ex. SJ-16 (June 2013 National Geographic magazine); a magazine mailed to an inmate at a different prison, Pl.'s Ex. SJ-17 (March 2014 Rolling Stone magazine), and a magazine bearing Hayes's name which appears to merit censorship under the publications policy, Pl.'s SJ-10 (March 2012 Esquire magazine). Hayes's evidence—twelve publications in almost four years—fails to demonstrate the requisite level of pervasive action necessary to survive summary judgment. Moreover, the magazines appear to bear the initials of staff members other than the named defendants. As for Hayes's assertion that a (single) Caucasian inmate "was permitted to receive several books through ECI's mail-room that were not sent to him from the publisher," Am. Compl. 14, Hayes does not explain whether these books came from another source permitted under DPS's publications policy. Thus, Hayes has failed to make the requisite showing, and the court grants summary judgment to defendants.

In seeking summary judgment, defendants also argue that they are entitled to qualified immunity. See Mem. Supp. Mot. Summ. J. [D.E. 39] 10–11. In light of the court's conclusions concerning Hayes's constitutional claims, the court need not address defendants' arguments concerning qualified immunity.

II.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 38]. The clerk shall close the case.

SO ORDERED. This 12 day of December 2014.

JAMES C. DEVER III
Chief United States District Judge

11